UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
BMG RIGHTS MANAGEMENT (US) LLC,           Civil Action No.

                          Plaintiff,           **COMPLAINT AND**
    v.                                          **JURY DEMAND**

MGA ENTERTAINMENT, INC.,

                          Defendant.
------------------------------------------------------------------------x

Plaintiff, BMG RIGHTS MANAGEMENT (US) LLC, a Delaware corporation ("BMG" or "Plaintiff") alleges the following against defendant MGA Entertainment, Inc. ("Defendant"):

## NATURE OF THE ACTION

1. By this complaint, BMG, a record label and music publishing company that has invested and risked money, time, and energy to develop and protect its catalogue of copyrights, seeks redress for the Defendant's willful copyright infringement of one of its musical compositions. The Defendant exploited, without authorization, one of BMG's copyrighted musical compositions by making an unauthorized derivative work of that composition and then unlawfully reproduced, synchronized, distributed and publicly performed the infringing work. Despite being on notice of its infringement and unlicensed uses of the composition, the Defendant has refused to remedy its wrongdoing, leaving BMG no alternative but to bring this action.

## JURISDICTION AND VENUE

2. This is a civil action in which BMG seeks, amongst other things, monetary damages and injunctive relief against Defendant for copyright infringement under the copyright laws of the United States: 17 U.S.C. § 101 *et seq*.

3. Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338.

4. This Court has supplemental jurisdiction over any common law claims pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Defendant, and venue in this District is proper under 28 U.S.C. § 1391(b) and (d) and 28 U.S.C. § 1400(a), in that the Defendant or its agents are conducting business in this District, Plaintiff is located in, and conducts business in, this District, and a substantial part of the acts of copyright infringement complained of herein occurred in this District.

6. Upon information and belief, Defendant is a foreign corporation duly registered with New York Department of State to conduct business within the State of New York, and therefore is subject to the personal jurisdiction of this Court.

7. Upon information and belief, Defendant has previously submitted to the personal jurisdiction of this Court.

8. Alternatively, the Court has personal jurisdiction over Defendant pursuant to New York Civil Practice Law and Rules ("CPLR") §§ 302(1), (2) and (3) *et seq.* because upon information and belief, Defendant derives substantial revenue from interstate commerce, conducts business over the internet, and has performed acts causing harm to BMG, including infringing a copyright controlled by BMG, a domiciliary of New York, which give rise to this action.

9. Upon information and belief, Defendant has committed a tortious act of copyright infringement within the State of New York.

10. Upon information and belief, Defendant has committed a tortious act of copyright infringement without the state of New York causing injury to BMG, a resident and domiciliary of New York.

11. Upon information and belief, Defendant regularly does or solicits business, and engages in a persistent course of conduct, or derives substantial revenue from goods sold in the State of New York.

12. Specifically, Defendant sells its products in the state of New York, including products that infringe BMG's copyright at issue.

13. Defendant expects or should reasonably expect its acts of copyright infringement to have consequences in the State of New York and derives substantial revenue from interstate or international commerce.

14. Upon information and belief, Defendant has continuously and systematically transacted business within the State of New York by selling its products in New York, directly advertising to consumers in New York and operating and maintaining an interactive website that allows for the transaction of business with customers located in New York.

## PARTIES

15. Plaintiff BMG is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York, County of New York.

16. BMG is one of the largest music publishing companies and record labels in the world. As part of its business operations, BMG releases, manages and administers musical compositions and sound recordings for thousands of artists and song writers, including many of the most popular and successful recording artists and song writers in the world.

17. In the course of its business, BMG expends great effort in maximizing the revenue generated by, and the value of, the musical compositions under its administration through the proper licensing of many of those musical compositions for use in film, television, commercials and consumer products.

18.     BMG also expends great effort in protecting the image and artistic integrity of the artists and songwriters whose musical compositions are administered by BMG by ensuring that any authorized use of a musical composition administered by BMG comports with the artistic values, aesthetics and moral values of the artists and song writers whose musical composition may be licensed by BMG.

19.     Upon information and belief, Defendant is a foreign business corporation for profit duly organized and existing under the laws of the State of Delaware with its principal place of business in the State of California, County of Los Angeles.

20.     Upon information and belief, Defendant is duly registered with the New York State Department of State as a foreign corporation and authorized to conduct and transact business in the State of New York.

21.     Upon information and belief, Defendant is one of the largest and most profitable manufacturers of children's toys and entertainment products in the world.

## FACTUAL ALLEGATIONS

**The Original Musical Composition, "My Humps" and Defendant's Access**

22.     BMG controls, and is the beneficial owner of, seventy-five percent (75%) of the copyrighted musical composition and lyrics of the song titled *My Humps* ( "My Humps") written by William Adams, Jr., professionally known as "will.i.am", and David Payton and originally performed and made popular by the pop-rap group, the Black Eyed Peas.

23.     The musical composition and lyrics of *My Humps* constitute an original work of authorship and was duly registered in the United States Copyright Office on July 18, 2006. A copy of the copyright registration for *My Humps* is annexed hereto as Exhibit "A".

24.     The Black Eyed Peas are arguably the most popular and recognized pop musical group in the past thirty (30) years and are beloved by millions of people around the world.

4

25. The Black Eyed Peas have sold millions of albums and their songs have been played an innumerable amount of times around the world in various different formats including terrestrial radio, digital radio, film and television.

26. The Black Eyed Peas have performed thousands of times in front of millions of people around the world and have won six "Grammy" awards.

27. The sound recording of the Black Eyed Peas' original performance of *My Humps* was released as a single from the Black Eyed Peas' award winning album, "Monkey Business," in 2005.

28. By all accounts, *My Humps* was a major smash hit for the Black Eyed Peas and their association with the song is very well known by the general public.

29. Upon information and belief, tens of millions of copies of My Humps have been sold around the world, including millions of copies within the United States.

30. *My Humps* was a top 10 single on many international sales and airplay charts, was certified "gold" and "platinum" by multiple international recording associations, including in the United States, and won the Black Eyed Peas a "Grammy" award for Best Pop Performance by a Duo or Group in 2007.

31. *My Humps* also reached number three on the Billboard Hot 100 chart, the music industry standard record chart in the United States for songs, published weekly and nationally by *Billboard* magazine.

32. Upon information and belief, the Billboard Chart rankings are based on physical and digital sales, radio play, and online streaming in the United States.

33. Upon information and belief, *My Humps* was played millions of times on traditional terrestrial radio stations around the United States.

34. Upon information and belief, *My Humps* has been digitally streamed over a billion times on popular online digital music services like Spotify, Apple Music and Amazon Music, all of which are accessible in the United States.

35. Upon information and belief, *My Humps* was performed by the Black Eyed Peas hundreds of times at concerts and other live performances across the United States.

36. At all times after the registration of *My Humps* with the United States Copyright Office, the composition was published and distributed in different formats with a conspicuous copyright notice.

37. The Black Eyed Peas also released a music video for *My Humps*.

38. Upon information and belief, the music video for *My Humps* has been viewed billions of times including over seven hundred million (700,000,000) times on the www.Youtube.com website.

39. The video for *My Humps* also won "Best Hip Hop Video" at the 2006 MTV Video Music Awards.

40. As a result of the tremendous amount of public performances, sales and overall popularity and commercial success of *My Humps*, Defendant clearly had access to *My Humps*.

**Defendant's Infringing Work, "My Poops" and the Poopsie Slime Surprise Product Line**

41. Upon information and belief, sometime after the composition of *My Humps* was registered in the United States Copyright Office, Defendant created a product line called Poopsie Slime Surprise.

42. This product line included a number of different toys, including, but not limited to, a dancing unicorn doll (the "Dancing Unicorn Toy") and a unicorn doll that excretes sparkling slime.

6

43. In connection with the marketing of the Poopsie Slime Surprise product line, Defendant also created a song called *My Poops* (the "Infringing Work") that clearly copies from, and is substantially similar to, *My Humps*.

44. Defendant also made a music video for the Infringing Work featuring animated versions of their Dancing Unicorn Toys singing and dancing to the Infringing Work (the "Infringing Video").

45. The Infringing Video was distributed on the www.YouTube.com website and elsewhere.

46. Defendant also incorporated the Infringing Work into its physical Dancing Unicorn Toys. The Dancing Unicorn Toys start to play and dance to a copy of the Infringing Work when a heart-shaped bellybutton on the front of the toy is pressed.

47. As a key marketing component for its Poopsie Slime Surprise product line, Defendant also placed a sticker on the packaging of the Dancing Unicorn Toy specifically directing consumers to "Dance to" the *My Poops* song and Infringing Video on YouTube.

48. Defendant has been selling the Dancing Unicorn Toys incorporating the Infringing Work all over the world and has received substantial revenue therefrom.

49. Music, especially a hit song such as *My Humps*, adds great value when incorporated into a product or used in a video advertisement, because it increases consumer recognizability, consumer engagement and attention to the product. This results in greater consumer recognition of the product, brand and company, and leads to an increase in sales, revenue, and overall commercial gain.

50. The Infringing Work is so substantially similar to *My Humps* that it is obvious that the Infringing Work was intentionally copied from *My Humps* and was created to

commercially exploit the popularity of, and goodwill associated with, *My Humps* and the Black Eyed Peas in order to sell more products.

51. Defendant actually copied *My Humps*.

52. Defendant's copying of *My Humps* is illegal because a substantial similarity exists between the Infringing Work and the protectible elements of *My Humps*.

53. First, the title of the infringing work is *My Poops,* which is an obvious play on the name of the copyrighted composition, *My Humps*.

54. Second, The Infringing Work has a number of obvious and substantial similarities to the protectable elements of the musical composition and lyrics of *My Humps* including its: (i) melody; (ii) countermelody; (iii) bassline; (iv) rhyme scheme; (v) lyrics; (vi) lyrical references; (vii) tempo; (viii) drum patterns and percussion; (ix) chord progression; (x) signature phrasing; (xi) cadence and (xii) key.

55. Defendant's copying of all these protectable elements of *My Humps* constitutes copyright infringement.

56. Defendant's intent to copy *My Humps* is further evidenced by the fact that it chose a lead vocalist to sing the Infringing Work who sounds very similar to the Black Eyed Peas member, professionally known as "Fergie" who is prominently featured in the original sound recording of *My Humps*. The vocalist singing the Infringing Works uses a similar delivery and vocal inflections as used by Fergie on the original sound recording.

57. At no time herein did BMG, or anyone else grant Defendant a valid license to use, copy, distribute, make a derivative work from or otherwise exploit the musical composition *My Humps*.

58. The Infringing Work was a key component of Defendant's marketing campaign for the entire Poopsie Slime Surprise product line.

59. Upon information and belief, the Poopsie Slime Surprise product line has generated tens of millions of dollars in revenue for Defendant.

60. Upon discovering Defendant's unauthorized use of *My Humps*, BMG contacted Defendant and demanded that Defendant cease and desist its uses of the Infringing Work and make an accounting to BMG.

61. Despite being put on notice of BMG's rights and the demand to cease and desist all uses of the infringing work, and provide an accounting, Defendant refused to do so. Defendant ignored BMG's request and continues its infringing activity including, but not limited to, the sale of toys incorporating copies of the Infringing Work and the public performance of the Infringing Video.

## FIRST CAUSE OF ACTION

### Copyright Infringement under 17 U.S.C. § 101 *et seq.*
### (By BMG against Defendant)

62. Plaintiff incorporates and realleges all of the preceding allegations previously set forth as though the same were set forth herein.

63. This cause of action arises under 17 U.S.C. § 501.

64. The musical composition and lyrics of *My Humps* constitute an original work of authorship under 17 U.S.C. § 102(a)(2).

65. The musical composition and lyrics of *My Humps* were duly registered with the United States Copyright Office.

66. At all times relevant, BMG controls and is the beneficial owner of seventy-five percent (75%) of the exclusive rights in *My Humps* provided by 17 U.S.C. § 106.

67. Due to the extensive sales, radio play, streaming, and public performance of *My Humps* and its music video, Defendants had access to *My Humps*.

68. Defendant has actually copied *My Humps* when it created the Infringing Work.

69. Defendant's copying of *My Humps* is illegal because a substantial similarity exists between the Infringing Work and the protectible elements of *My Humps*.

70. The title of the infringing work is *My Poops,* which is an obvious play on the name of the copyrighted composition, *My Humps*.

71. The Infringing Work has a number of obvious and substantial similarities to the protectable elements of the musical composition and lyrics of *My Humps* including its: (i) melody; (ii) countermelody; (iii) bassline; (iv) rhyme scheme; (v) lyrics; (vi) lyrical references; (vii) tempo; (viii) drum patterns and percussion; (ix) chord progression; (x) signature phrasing; (xi) cadence and (xii) key.

72. Defendant's willful copying of all these protectable elements of *My Humps* violated BMG's rights under 17 U.S.C. § 106 and constitutes copyright infringement under 17 U.S.C. § 501.

73. The Infringing Work is so substantially similar to *My Humps* that it is obvious that the Infringing Work was intentionally copied from *My Humps* and was written to commercial exploit the popularity of, and goodwill associated with, *My Humps* and the Black Eyed Peas in order to sell more of the Poopsie Slime Surprise product line.

74. Defendant's creation of the Infringing Work as the result of substantial copying of the protectable elements of *My Humps* also constitutes the unlawful creation of a derivative work in violation BMG's rights under 17 U.S.C. § 106 and constitutes further copyright infringement under 17 U.S.C. § 501.

75. Defendant's synchronization and reproduction of the Infringing Work in its Dancing Unicorn Toy is a violation BMG's rights under 17 U.S.C. § 106 and constitutes further copyright infringement under 17 U.S.C. § 501.

76. Defendant's creation of the Infringing Video synchronizing the Infringing Work constitutes a second unlawful creation of a derivative work of *My Humps* and is a violation BMG's rights under 17 U.S.C. § 106 and constitutes further copyright infringement under 17 U.S.C. § 501.

77. Defendant's reproduction and public performance of the Infringing Video on www.Youtube.com is a violation BMG's rights under 17 U.S.C. § 106 and constitutes further copyright infringement under 17 U.S.C. § 501.

78. BMG did not grant Defendant the right to copy, reproduce, sell, publicly perform, make a derivative work from or otherwise exploit the *My Humps*, nor did Defendant have a valid license to do so from any other source.

79. Upon information and belief, Defendant had actual knowledge that BMG was, and remains, the lawful beneficial owner of seventy-five percent (75%) of the musical composition *My Humps*, and that Defendant did not have the right to exploit it.

80. Defendant had actual or constructive knowledge that its unauthorized copying and otherwise exploitation of *My Humps* constituted willful copyright infringement of BMG's copyrighted work. Alternatively, Defendant's acts of infringement resulted from a reckless disregard for, or willful blindness to, BMG's rights.

81. Upon information and belief, Defendant has earned tens of millions of dollars in revenue from the sale of the Poopsie Slime Surprise production line, including the Dancing Unicorn toy, as a result of its acts of infringement of *My Humps*.

82. Defendant's acts of copyright infringement, unauthorized use of *My Humps* and the forced association with the Poopsie Slime Surprise product line has devalued future licenses for the composition and has thereby caused significant financial damage to BMG.

11

83. BMG is entitled to an injunction restraining Defendant and any of its officers, directors, agents, employees, representatives, and all persons acting in concert with it from further engaging in such acts of copyright infringement.

84. Pursuant to 17 U.S.C. § 504, BMG is entitled to recover from Defendant its actual damages, not readily ascertainable but believed to be in excess of Ten Million Dollars ($10,000,000.00), suffered as a result of Defendant's acts of copyright infringement.

85. Alternatively, pursuant to 17 U.S.C. § 504, BMG is entitled to elect to recover from Defendant statutory damages in an amount up to One Hundred Fifty Thousand Dollars ($150,000.00).

86. Pursuant to 17 U.S.C. § 505, BMG is further entitled to recover from Defendant the reasonable attorneys' fees and legal costs incurred by BMG because of Defendant's acts of copyright infringement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for judgment as follows:

**First Cause of Action:**

1. For a judgment that Defendant infringed BMG's copyrighted work pursuant to the U.S. Copyright Act of 1976, as amended 17 U.S.C. § 101, *et seq*.

2. For actual damages, pursuant to 17 U.S.C. § 504, in an amount not readily ascertainable but believed to be in excess of Ten Million Dollars ($10,000,000.00), suffered as a result of Defendant's acts of copyright infringement.

3. Alternatively, for statutory damages pursuant to 17 U.S.C. § 504 in an amount up to One Hundred Fifty Thousand Dollars ($150,000.00).

4. For BMG's costs in this action pursuant to 17 U.S.C. § 505.

5. For BMG's reasonable attorneys' fees incurred herein pursuant to 17 U.S.C. § 505.

6.  For a temporary, preliminary and permanent injunction providing: "Defendant, its officers, directors, agents, employees, representatives, and all persons acting in concert, shall be and hereby are enjoined from directly or indirectly infringing upon BMG's rights under federal or state law in *My Humps*, and any musical composition or sound recording, whether now in existence or later created, that is owned or controlled by BMG (or any parent, subsidiary, or affiliate record label of BMG) including without limitation using the internet, any media distribution system or any other means to reproduce, download or other obtain possession of *My Humps* or the Infringing Work; or to distribute, upload or otherwise make *My Humps* or the Infringing Work available for distribution to the public, except pursuant to a lawful license or with the express written authority of BMG. Defendant and its officers, directors, agents, employees, representatives, and all persons acting in concert, also shall destroy all copies of *My Humps* and the Infringing Work Defendant has downloaded, uploaded, maintained or stored maintained in any way, without BMG's express written authorization and shall destroy all copies of the *My Humps* and the Infringing Work transferred onto any physical medium or device in Defendant's possession, custody, or control.

7.  For such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues so triable.


Dated: Lake Success, New York
       January 19, 2023

                                        **ABRAMS FENSTERMAN, LLP**

                                        By: _____
                                        Seth L. Berman, Esq.
                                        3 Dakota Drive, Suite 300
                                        Lake Success, New York 11042
                                        (516) 328-2300
                                        sberman@abramslaw.com
                                        *Attorneys for Plaintiff*

13